﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 191118-44246
DATE: June 16, 2020

ORDER

Service connection for tinnitus is granted.

A rating in excess of 10 percent for degenerative arthritis of the right knee is denied.

A rating in excess of 10 percent for degenerative arthritis of the left knee is denied.

REMANDED

Entitlement to service connection for a low back disorder, to include as secondary to service-connected bilateral knee disabilities, is remanded.

FINDINGS OF FACT

1. Resolving all doubt in the Veteran’s favor, his currently diagnosed tinnitus had its onset in service. 

2. For the entire appeal period, the Veteran’s degenerative arthritis of the right knee is manifested by subjective complaints of pain, soreness, swelling, stiffness, aching, and giving way with flexion limited to, at most, 100 degrees and full extension, even in contemplation of functional loss due to symptoms such as pain, fatigue, weakness, lack of endurance, or incoordination, or as a result of repetitive motion and/or flare-ups, without ankylosis, recurrent subluxation or lateral instability, dislocated or removal of semilunar cartilage, impairment of the tibia and fibula, or genu recurvatum.

3. For the entire appeal period, the Veteran’s degenerative arthritis of the left knee is manifested by subjective complaints of pain, soreness, swelling, stiffness, aching, and giving way with flexion limited to, at most, 100 degrees and full extension, even in contemplation of functional loss due to symptoms such as pain, fatigue, weakness, lack of endurance, or incoordination, or as a result of repetitive motion and/or flare-ups, without ankylosis, recurrent subluxation or lateral instability, dislocated or removal of semilunar cartilage, impairment of the tibia and fibula, or genu recurvatum.

CONCLUSIONS OF LAW

1. The criteria for service connection for tinnitus have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for a rating in excess of 10 percent for degenerative arthritis of the left knee have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5010-5260.

3. The criteria for a rating in excess of 10 percent for degenerative arthritis of the right knee have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5010-5260.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1974 to January 1994. This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a rating decision issued in January 2017 by a Department of Veterans Affairs (VA) Regional Office. 

By way of background, the Veteran timely filed a Notice of Disagreement with the initial rating decision in January 2018, and the Agency of Original Jurisdiction (AOJ) issued a Statement of the Case in September 2019. A claimant with a legacy appeal can opt into the modernized review system under the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, also known as the Appeals Modernization Act (AMA), within 60 days of the issuance of a VA Statement of the Case or Supplemental Statement of the Case (SOC/SSOC) on or after February 19, 2019. 38 C.F.R. § 3.2400(c)(2). The claimant must file for a review option in accordance with § 3.2500 on a form prescribed by the Secretary within the time allowed for filing a substantive appeal under 38 C.F.R. § 19.52(b). In this regard, the Veteran timely submitted a Decision Review Request: Board Appeal (Notice of Disagreement) (VA Form 10182). In such election, he requested Direct Review of the evidence considered by the AOJ. Therefore, the Board’s review is limited to the evidence of record at the time of the issuance of the SOC on September 19, 2019.

In the September 2019 SOC, the AOJ determined that the Veteran had submitted new and relevant evidence in the form of VA treatment records and reopened the Veteran’s claim for service connection for tinnitus. Additionally, the AOJ determined the Veteran has a current diagnosis of tinnitus. Further, the AOJ found the Veteran had submitted new and relevant evidence and reopened the Veteran’s service connection claim for a low back disorder in the September 2019 SOC. In addition, the AOJ determined the evidence demonstrated an in-service event or disease and established a current diagnosis of degenerative arthritis of the spine during the pendency of the appeal. Under the AMA, the Board is bound by these favorable findings and has characterized the respective issues on appeal accordingly.

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff’d, 78 F.3d 604 (Fed. Cir. 1996). 

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, such as organic diseases of the nervous system, to a degree of 10 percent within one year, from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.R.F. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

1. Entitlement to service connection for tinnitus.

The Veteran contends his tinnitus is related to noise exposure during his military service. Specifically, he reports that he was exposed to excessive noise in the form of gunfire due to bi-annual weapons qualification and other munitions during his Primary Leadership/Non-Commission Officer training. Furthermore, he has reported his tinnitus has been constant and longstanding since his military service. 

The Veteran has not been afforded a VA examination or opinion regarding the etiology of his tinnitus and has not otherwise provided any medical opinion linking his current tinnitus to his in-service noise exposure. However, as noted previously, service connection may be granted based on continuity of symptomatology of a chronic disease under 38 C.F.R. § 3.309(a), despite the absence of a medical nexus opinion linking the present disability to the in-service noise exposure. In this regard, tinnitus is recognized as an organic disease of the nervous system, which is a chronic disease under 38 C.F.R. § 3.309(a). Thus, service connection may be granted on the basis of continuity of symptomatology even if there is no medical evidence of a nexus between the in-service noise exposure and the Veteran’s current tinnitus. 

In this case, the Board acknowledges that tinnitus was not explicitly diagnosed during service or within the applicable presumptive period. See 38 C.F.R. § 3.307(a)(3). Nevertheless, the record contains credible evidence of a continuity of tinnitus symptomatology beginning during service and continuing since discharge. Specifically, in May 2016 the Veteran reported he began experiencing a constant “hissing” in his ears during and since service. In this regard, the Board has no reason to doubt the veracity of the Veteran’s statements regarding the onset of his tinnitus and the continuity of pertinent symptomatology. In light of the foregoing, the Board resolves all doubt in the Veteran’s favor and finds that tinnitus had its onset during his military service. Consequently, service connection for such disorder is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, supra.

Increased Ratings

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Each disability must be viewed in relation to its history, and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. All reasonable doubt will be resolved in the claimant’s favor. 38 C.F.R. § 4.3. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

Separate ratings can be assigned for separate periods based on the facts found—a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are appropriate whenever the factual findings show distinct periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id.

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. In Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011), the United States Court of Appeals for Veterans Claims (Court) held that, although pain may cause a functional loss, “pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system.” Rather, pain may result in functional loss, but only if it limits the ability “to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance.” Id., quoting 38 C.F.R. § 4.40. 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). 

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint, even in the absence of arthritis. 38 C.F.R. § 4.59; Burton v. Shinseki, 25 Vet. App. 1, 5 (2011). In this regard, 38 C.F.R. § 4.59 requires that “[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.” Correia v. McDonald, 28 Vet. App. 158 (2016). Further, 38 C.F.R. § 4.59 is applicable to the evaluation of musculoskeletal disabilities involving actually painful, unstable or malaligned joints or periarticular regions, regardless of whether the Diagnostic Code under which the disability is evaluated is predicated on range of motion measurements. Southall-Norman v. McDonald, 28 Vet. App. 346 (2016).

2. Entitlement to a rating in excess of 10 percent for degenerative arthritis of the right knee.

3. Entitlement to a rating in excess of 10 percent for degenerative arthritis of the left knee.

The Veteran contends the severity of his service-connected bilateral knee disabilities warrant ratings in excess of those currently assigned. 

The appeal period before the Board stems from the Veteran’s October 12, 2016, claim, plus the one-year look-back period. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010). 

The Veteran’s degenerative arthritis of the right and left knees is currently rated as 10 percent disabling throughout the appeal period pursuant to Diagnostic Code 5010-5260. Diagnostic Code 5010 provides that traumatic arthritis is rated as degenerative arthritis under Diagnostic Code 5003. Pursuant to Diagnostic Code 5003, degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion of the specific joint involved. When, however, the limitation of motion of the specific joint involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, x-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations warrants a 20 percent evaluation. X-ray evidence of involvement of two or more major joints or two or more minor joints warrants a 10 percent evaluation. 38 C.F.R. § 4.71a. For the purpose of rating disability from arthritis, the knee is considered a major joint. See 38 C.F.R. § 4.45. 

Normal range of knee motion is 140 degrees of flexion and zero degrees of extension. 38 C.F.R. § 4.71, Plate II. 

Limitation of motion of the knee is contemplated in 38 C.F.R. § 4.71a, Diagnostic Codes 5260 and 5261. Diagnostic Code 5260 provides for a zero percent rating where flexion of the leg is limited to 60 degrees. For a 10 percent rating, flexion must be limited to 45 degrees. A 20 percent rating is warranted where flexion is limited to 30 degrees. A 30 percent rating may be assigned where flexion is limited to 15 degrees. 

Diagnostic Code 5261 provides for a zero percent rating where extension of the leg is limited to five degrees. A 10 percent rating requires extension limited to 10 degrees. A 20 percent rating is warranted where extension is limited to 15 degrees. A 30 percent rating may be assigned where extension is limited to 20 degrees. For a 40 percent rating, extension must be limited to 30 degrees. Finally, where extension is limited to 45 degrees a 50 percent rating may be assigned. 

VA’s General Counsel has stated that separate ratings under Diagnostic Code 5260 (limitation of flexion of the leg) and Diagnostic Code 5261 (limitation of extension of the leg) may be assigned for disability of the same joint. VAOPGCPREC 9-04 (September 17, 2004), published at 69 Fed. Reg. 59,990 (2004).

At a September 2015 VA orthopedic consultation, the Veteran had full extension and flexion beyond 100 degrees, and the general stability of both knees was intact. He had some crepitus, but neither knee was inflamed. There was no acute fracture or dislocation of suprapatellar effusion. In February 2016, the Veteran had cortisone injections in both knees, and began Synvisc injections in June 2016. The Veteran had also undergone physical therapy and aquatherapy for both knees, which provided temporary relief. See June 2016 VA treatment record. 

On VA examination in November 2016, the Veteran reported difficulty with squatting and climbing stairs. While he further reported pain, daily flare-ups, and instability, he had flexion to 120 degrees and extension to zero degrees, to include following repetitive use testing. While he had pain with flexion and extension, such did not result in/cause functional loss. The Veteran also had pain with weight-bearing and crepitus, but no localized tenderness or pain on palpitation of the joint or associated soft tissue. Muscle strength testing was normal at 5/5 for bilateral knee flexion and extension. Bilateral joint stability was normal upon testing for anterior, posterior, and medial-lateral instability. There was no effusion into the joint, recurrent patellar subluxation/dislocation, or meniscal condition.

In January 2017, the Veteran reported pain and stiffness in both knees. At such time he was noted to have full extension and good flexion, however, with no acute inflammatory changes and no significant ligamentous laxity. See January 2017 VA orthopedic consultation note. A December 2017 VA treatment note reveals the Veteran complained of bilateral knee pain, with specific symptoms of medial-sided knee pain with mechanical symptoms of catching. At such time, he had full active range of motion in the right knee and to 100 degrees in the left knee. There was no laxity observed on examination. Magnetic reasoning imaging (MRI) revealed mild degenerative changes in the bilateral knees with joint space narrowing medial compartment. Additionally, a medial meniscus tear of the right knee was noted. See December 2017 VA treatment record. 

In March 2018, the Veteran underwent right knee arthroscopy, partial lateral meniscectomy for a partial lateral meniscus tear. At a follow-up visit four weeks post-surgery, he had no complaints of knee pain and experienced improved standing and walking tolerance, with some fatigue and discomfort with prolonged standing and walking. At such time he had mild peripatellar swelling, minimal peripatellar tenderness to palpation of soft compartments, no appreciable effusion, muscle atrophy, or abnormal ligamentous laxity, and 4+/5 quadriceps muscle strength, with 2/4 patella tendon reflexes. See March, April 2018 VA surgery Consultation Notes.

The Veteran was afforded another VA examination in July 2019 to determine the current nature and severity of his bilateral knee disorders. At such time, he reported that his knees had grown progressively worse in the last two years. He denied experiencing flare-ups, however, stating that his bilateral knee pain was constant and rated as a 5/10. His pain was aggravated by going up and down stairs. He currently took 50 mg of Tramadol twice a day with minimal relief. Upon physical examination, range of motion testing revealed the Veteran had bilateral knee flexion to 120 degrees and extension to zero degrees, with pain on examination that caused functional loss. However, following repetitive-use testing with at least three repetitions, there was no additional functional loss or reduced range of motion. The Veteran also had pain with weight-bearing and localized tenderness or pain on palpitation of the joint or associated soft tissue. Muscle strength testing was normal at 5/5 for bilateral knee flexion and extension, and bilateral joint stability was normal upon testing for anterior, posterior, and medial-lateral instability. There was no crepitus, effusion into the joint, recurrent patellar subluxation/dislocation or meniscal condition. The Veteran’s bilateral knee disorders reportedly caused disturbance of locomotion, interference with sitting, and interference with standing.

Based on the above, the Board finds that ratings in excess of 10 percent for the Veteran’s bilateral knee disabilities are not warranted at any time during the appeal period. In this regard, the evidence does not reflect flexion limited to 60 degrees or extension limited to 5 degrees in either knee so as to warrant even a noncompensable rating under Diagnostic Code 5260 or 5261. Specifically, VA treatment records note flexion at more than 100 degrees, or “full extension and good flexion.” At both the November 2016 and July 2019 VA examinations, the Veteran had flexion to 120 degrees and extension to zero degrees, to include with repetitive-use testing.

The Board also notes the Veteran reported bilateral knee instability at his November 2016 VA examination and reportedly wears knee braces and uses a cane. As such, the Board has considered whether a higher or separate rating is warranted under Diagnostic Code 5257. VAOPGCPREC 23-97 (July 1, 1997), 62 Fed. Reg. 63,604 (1997); VAOPGCPREC 9-98, 63 Fed. Reg. 56,704 (1998). Such Diagnostic Code provides for assignment of a 10 percent rating when there is slight recurrent subluxation or lateral instability, a 20 percent rating when there is moderate recurrent subluxation or lateral instability, and a 30 percent rating for severe recurrent subluxation or lateral instability. In this regard, the Court has held that Diagnostic Code 5257 does not require objective medical evidence of lateral instability for a rating to be assigned. English v. Wilkie, 30 Vet. App. 347 (2018). 

However, in the instant case, the Board finds that, while the Veteran is competent to describe feelings of giving way, he is not competent as a lay person to diagnose lateral instability or subluxation. In this regard, there is no indication that he possesses the requisite knowledge to administer or interpret specialized testing that would reveal instability or subluxation. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Further, the November 2016 and July 2019 VA examiners, who are medical professionals that conducted appropriate testing, found that there was no laxity or subluxation in either knee. Consequently, the Board affords greater weight to the VA examiners who found no instability in the left and right knees than the Veteran’s generalized lay statements regarding the presence of such impairment. See, e.g., Waters v. Shinseki, 601 F.3d 1274, 1278 (2010).

The Board further notes the Veteran underwent an arthroscopy, partial lateral meniscectomy for a partial lateral meniscus tear of the right knee in March 2018. Therefore, the Board has considered the applicability of Diagnostic Code 5259, which provides a single 10 percent rating for symptomatic removal of semilunar cartilage. However, as the evidence fails to demonstrate any residuals of such surgery, the Board finds a separate rating under Diagnostic Code 5259 is not warranted. Here, the evidence, to specifically include the July 2019 VA examination report, revealed no meniscal symptoms or residuals, other than pain, of the aforementioned surgery. Further, as there is no evidence of ankylosis, dislocation of semilunar cartilage, impairment of the tibia or fibula, or genu recurvatum, higher or separate ratings under Diagnostic Codes 5256, 5258, 5262, and 5263, respectively, are not warranted.

In making its determinations in this case, the Board acknowledges the Veteran’s belief that his bilateral knee symptoms are more severe than as reflected by the currently assigned ratings. While the Board recognizes that the Veteran is competent to provide statements regarding his observable symptomatology, he is not competent to provide an opinion regarding the severity of his symptomatology in accordance with the rating criteria. See Woehlaert, supra. Rather, the Board finds the medical evidence in which professionals with medical expertise examined the Veteran, acknowledged his reported symptoms, and described the manifestations of such disabilities in light of the rating criteria to be more persuasive than his reports regarding the severity of such conditions.

The Board has also considered whether staged ratings under Fenderson, supra, are appropriate for the Veteran’s service-connected bilateral knee disabilities; however, the symptoms associated with such disabilities have remained stable throughout the appeal period. Therefore, assigning staged ratings for such disabilities is not warranted. 

Further, the Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record, with regard to the rating claims addressed herein. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

In sum, the Board finds that ratings in excess of 10 percent for the Veteran’s bilateral knee disabilities are not warranted at any time during the appeal period. In reaching such determination, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against his claims. Therefore, the benefit of the doubt doctrine is not applicable in the instant appeal, and his increased rating claims must be denied. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

REASONS FOR REMAND

4. Entitlement to service connection for a low back disorder, to include as secondary to service-connected bilateral knee disorders.

The Veteran contends his back disorder, diagnosed as degenerative arthritis, is related to his military service. Specifically, he asserts such is a result of lifting and carrying heavy mail bags and parcels as a result of his mail handling duties while stationed in Germany. Alternatively, he believes his current low back disorder is proximately due to and/or aggravated by his service-connected bilateral knee disabilities. 

In September 2019, the Veteran was afforded a VA examination to ascertain the nature and etiology of his back disorder. Following physical examination and a review of the record, the examiner opined that such disorder is less likely than not incurred in or caused by the claimed in-service injury, event, or illness. When providing the opinion, the examiner noted low back pain is listed on the Veteran’s November 1993 separation examination. However, the examiner found significant the long interval without evaluation, imaging, or treatment for the Veteran’s back disorder. Here, the examiner relies, at least in part, on a lack of documentation regarding back symptoms and notably does not appear to consider the Veteran’s report of a continuity of back symptomatology after service. Furthermore, the Board notes the examiner does not discuss the Veteran’s contention that his mail handling duties caused his back disorder. 

With respect to the theory of service connection on a secondary basis, the examiner opined that such disorder is less likely than not proximately due to or the result of the Veteran’s service-connected conditions. The examiner’s rationale simply states there is no medical evidence of any connection between the Veteran’s back condition and bilateral knee conditions. Upon review, the Board finds the basis for the opinion lacking in detail. In addition, the Board notes the Veteran wears knee braces and uses a cane in connection with treatment for his back and that in June 2016, he underwent gait training to improve his ambulation. See VA treatment records. Further, a January 2017 orthopedic surgery outpatient note reveals the Veteran had a slight limp due to pain and stiffness in his knees. Here, the Board finds such evidence suggests possible relationship between the Veteran’s back disorder and his service-connected bilateral knee disabilities, to include whether the lack aggravates the former. In this respect, the September 2019 examiner did not provide a clear opinion with respect to aggravation. 

Given the above findings, a remand is necessary to obtain an addendum opinion addressing such matters.

The matter is REMANDED for the following action:

Forward the record, to include a copy of this Remand, to an appropriate VA clinician other than the September 2019 VA examiner for a medical opinion addressing the etiology of the Veteran’s low back disorder. The need for an examination of the Veteran is left to the discretion of the clinician selected to write the opinion. 

Following a review of the record, the clinician should address the following inquiries:

(A) Is it at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran’s current low back disorder (diagnosed as degenerative arthritis) had its onset in, or is otherwise related to, his military service, to include lifting and carrying heavy mail bags and parcels in service?

(B) Did the Veteran’s degenerative arthritis manifest within one year of his separation from service in January 1994? If so, please describe the manifestations of such.

(C) Is it at least as likely as not (i.e., 50 percent or greater probability) that the Veteran’s low back disorder was caused or aggravated by his service-connected bilateral knee disorders? Aggravation is defined as the permanent worsening beyond the natural progression of the disability or disease. For any aggravation found, the examiner should state, to the best of their ability, the baseline of symptomatology and the amount, quantified if possible, of aggravation beyond the baseline symptomatology by the aggravation.

In providing the above opinions, the clinician must address the Veteran’s reports regarding his in-service duties and symptomatology.

A complete rationale for any opinion offered should be provided.

 

 

 

M. M. CELLI

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. M. Kelly, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.